714 A.2d 311

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT,
v. WALTER F. HILL, A/K/A WILLIAM DOUSE,
DEFENDANT–RESPONDENT.

Argued April 27, 1998—Decided July 22, 1998.

*Carol M. Henderson,* Deputy Attorney General, argued the cause for appellant (*Peter Verniero,* Attorney General of New Jersey, attorney).

*Cecelia Urban,* Assistant Deputy Public Defender, argued the cause for respondent (*Ivelisse Torres,* Public Defender, attorney).

PER CURIAM.

The question in this appeal is whether *N.J.S.A.* 2C:43–3, permits restitution to third parties who have reimbursed a crime victim for losses suffered as a result of criminal conduct. Such third parties, who may be viewed as "indirect victims of crime," are usually collateral sources of funds covering the losses. Such collateral sources include insurance companies, government entities, employers, or health organizations that have provided reimbursement or assistance to crime victims. A victim would ordinarily be entitled to restitution for the injuries or losses sustained but for the reimbursement from the third party and the Code's preclusion against double recovery, *N.J.S.A.* 2C:44–2f.

I

Defendant, Walter Hill, shot Asbury Park police officer Sean Ryan in the chest. Only the fortunate circumstance that the officer was wearing a bullet-resistant vest saved the officer's life. A jury convicted defendant of attempted murder. In addition to his sentence of twenty years, with a ten-year Graves Act parole disqualifier, the trial court ordered defendant to pay $3,195 in

restitution to the City of Asbury Park for the benefits paid to the injured police officer as a result of the injuries sustained from defendant's crime. Those benefits covered the officer's medical bills and his loss of pay while on disability.

On appeal, the Appellate Division affirmed defendant's conviction but determined, based upon its reading of the definition of "victim" in *N.J.S.A.* 2C:43–3e, that the City of Asbury Park was not a victim and therefore was not entitled to restitution. The Appellate Division noted that *N.J.S.A.* 2C:43–3e defined "victim" as "a person who suffers a personal, physical or psychological injury ... as a result of a crime committed *against that person* ...." Based upon its reading of *N.J.S.A.* 2C:43–3e, the Appellate Division found that "[t]he City of Asbury Park was not a 'victim' because it was not 'that person' against whom the crime was committed." We granted certification, 152 *N.J.* 11, 702 *A.2d* 350 (1997), to review the vacation of the restitution award.

## II

■ The State contends that the reasoning of the Appellate Division is flawed in that it is premised upon an edited version of the definition of "victim." The complete definition of victim in *N.J.S.A.* 2C:43–3e contains language that was omitted from the definition relied upon by the Appellate Division. *N.J.S.A.* 2C:43–3e states:

> The term "victim" shall mean a person who suffers a personal physical or psychological injury or death *or incurs loss of or injury to personal or real property as a result of a crime committed against that person,* or in the case of a homicide, the nearest relative of the victim.
>
> [Emphasis added.]

The State argues that the additional phrase "or incurs loss of or injury to personal or real property as a result of a crime committed against that person" should be read to include as victims persons who suffer economic loss or injury as a result of the offense committed against another person. Under that interpretation, the City of Asbury Park is a victim because it incurred a

pecuniary loss as a result of defendant's attempt to murder Officer Ryan.

The State argues that the statutory definition is broad enough to go beyond direct or primary victims to include indirect or secondary victims who incur "loss of or injury to personal or real property as a result of a crime committed against" the direct victim. The third party stands in the place of the victim, whose loss or injury has been absorbed by, or transferred to, the third party. We are not so certain that a grammarian would read the phrase "as a result of a crime committed against that person" to provide a definition of victim only in the case of property losses. We believe that a fair reading of the sentence structure is that the phrase "that person" modifies the word "person," which appears earlier in the definition of "victim," whether that person suffers personal injury or loss of property. In either case, it is the crime against that person that triggers restitution under the Act.[1]

The State relies on cases from other jurisdictions in support of its view. A similar factual and legal scenario was presented in *People v. Cruz*, 81 *N.Y.*2d 996, 599 *N.Y.S.*2d 533, 615 *N.E.*2d 1017 (1993). In that case the New York Court of Appeals upheld a restitution award to Nassau County for costs resulting from injuries caused by the defendant to a police officer. In the *Cruz* case, an off-duty detective was injured when he attempted to arrest the defendant for burglary. *Id.* 599 *N.Y.S.*2d 533, 615 *N.E.*2d at 1017. The Court found that the County's losses were not voluntarily incurred expenses of law enforcement, *e.g.*, drug-buy money, but rather stemmed from a legal obligation "directly and causally related to the crime," the obligation to pay an injured employee sick leave. *Ibid.* The Court of Appeals therefore held that restitution was appropriate under these circumstances. *Ibid.* The State cites other courts that have determined that third parties, such as insurance companies, government agencies, and

---

[1] The explicit reference, in the case of a homicide, to the nearest relative of the victim confirms that reading. If the City of Asbury Park were a victim, who would be its "nearest relative"?

medical groups, are indirect or secondary victims who can recover restitution under their state statutes. *See Roe v. State,* 112 *Nev.* 733, 917 *P.*2d 959, 960 (1996) (considering state agency victim under restitution statute if harm or loss suffered was unexpected and occurred without voluntary participation of agency suffering harm or loss, and money expended for direct victims); *People v. McDaniel,* 219 *A.D.*2d 861, 631 *N.Y.S.*2d 957 (1995), *app. denied* 88 *N.Y.*2d 850, 644 *N.Y.S.*2d 697, 667 *N.E.*2d 347 (1996) (finding that victim's medical insurer and employer were victims in their own right and could receive restitution for cost of medical care and sick leave); *State v. Sanchez,* 73 *Wash.App.* 486, 869 *P.*2d 1133, 1135 (1994) (finding that insurance company was secondary victim and could receive restitution for vehicles damaged or destroyed by "joyriding" juveniles).

Almost invariably, however, such results are driven by the language of the act involved. For example, the New York law allows restitution to a "governmental agency that has . . . provided financial assistance or compensation to the victim." *NY Penal Law* § 60.27 (McKinney 1997). Defendant thus focuses on the statutory language used in defining the term "victim" and the interpretation placed upon that language by the court. *See State v. Gardiner,* 127 *Idaho* 156, 898 *P.*2d 615, 623–27 (Ct.App.1995) (concluding that Idaho statute did not contemplate restitution to victim's insurer). Defendant contends that the clear language of the New Jersey restitution statute does not permit indirect victims to recover, citing *State v. Newman,* 132 *N.J.* 159, 623 *A.*2d 1355 (1993).

However, *Newman* does not control here. In *Newman,* this Court held that drug-buy monies expended by the prosecutor's office were not recoverable as restitution. The Court reasoned that the county was not a victim within the statutory definition or as that term had historically been understood. *Id.* at 176–77, 623 *A.*2d 1355. The Court found the drug-buy situation was not "the typical case, in which the criminal act causes the victim's loss [since] the County expended funds to assist defendant in the

commission of the offense." *Id.* at 177, 623 *A.*2d 1355. No action by the City facilitated the commission of the offense in this case. Defendant attempted to murder a police officer, a municipal employee. The City sustained a loss because of the sick time and other expenses it was obligated to provide for the officer. The City did not suffer a loss of money expended in order to facilitate an offense or obtain evidence of a crime.

### III

■ It is possible that we could interpret the word "victim" to include those who suffer monetary loss as a result of crimes committed against others. *See Roig v. Kelsey,* 135 *N.J.* 500, 641 *A.*2d 248 (1994) (interpreting New Jersey Automobile Reparation Reform Act to preclude recovery of deductible expenses despite plain language of statute indicating otherwise); *see also* Stewart G. Pollock, *The Art of Judging,* 71 *N.Y.U. L.Rev.* 591, 599 (June 1996) (describing process by which courts expand and contract statutory language when they believe it consistent with legislative intent). We would perhaps do so here if we believed that there were any genuine need to perform "judicial surgery" on this statute. *See Chamber of Commerce v. State,* 89 *N.J.* 131, 445 *A.*2d 353 (1982).[2]

However, as we understand the practice throughout the State, the dilemma posed by this case has rarely presented itself. Prior to the 1991 amendment to *N.J.S.A.* 2C:43–3, the term "victim" was not defined. *L.* 1991, *c.* 329 § 2. At oral argument, the Attorney

---

[2] The canon of "strict construction" of penal statutes, *see State v. Galloway,* 133 *N.J.* 631, 658–59, 628 *A.*2d 735 (1993), cautions against a liberal construction of the restitution provision. However, the Code itself instructs that its language is to be interpreted in furtherance of the goals that the individual section is designed to advance. *N.J.S.A.* 2C:1–2. The goal of restitution is rehabilitation. *See generally State v. Newman,* 132 *N.J.* 159, 164–69, 623 *A.*2d 1355 (1993) (discussing historical distinction between fines and restitution). In light of the rehabilitative goal of restitution and the Code's guidance with respect to statutory interpretation, the canon of "strict construction" need not necessarily govern here.

General represented that the practice prior to the 1991 amendment was to provide restitution to indirect victims of crime. The amendment should not change that practice. Ninety-five percent of all criminal cases are disposed of by plea agreement, and we suspect that consent to the mechanics of restitution can be readily resolved in the plea process. In those cases in which a defendant resists direct payment to the third party, a court may order a defendant to make restitution to the victim on condition that the victim reimburse the collateral source of the funds. Restitution is normally made through the probation department. *See N.J.S.A.* 2C:45–1. Such a practice is not significantly different from the familiar practice under which physician and hospital liens are recognized in cases of civil reparation. We see no reason why all related aspects of the criminal act should not be disposed of in the criminal proceedings. All direct and immediate consequences of the crime should be compensated. If any problem persists in administration of the restitution provisions, we are certain that the Legislature can amend the statute to address them.

## IV

Concerning the specifics of this case, defendant argued, for the first time before us, that the City did not suffer a "loss" under *N.J.S.A.* 2C:43–3 and is therefore not entitled to restitution under the statute. A question has arisen concerning whether the officer received sick-leave benefits or temporary-disability benefits. If the latter, a substantial portion of the loss would have been covered by workers' compensation benefits paid by the compensation carrier and not the City. If the former, defendant argues that under the collective bargaining agreement in place the City was obligated to pay the officer for sick leave and had no right to subrogation for those funds. Additionally, defendant argues that by permitting the City to recover these funds, the City gets a double benefit in that the City recovered its money while at the same time discharging a portion of its obligation to pay the officer, upon retirement, for 135 unused sick-leave days.

We express no opinion on the newly asserted issues. We see no reason generally why the fortuity of an injured party being insured or otherwise protected from suffering economic hardship should excuse defendant from an obligation to pay restitution. An easy illustration is that involving a car thief. One who steals an insured car should not thereby escape restitution for the loss. The issue in this case is whether the police officer suffered a loss of earning capacity due to the criminal act for which loss collateral sources had reimbursed him.

We, therefore, make no determination on the issue of the amount of loss and to whom restitution should be made. We leave it to the trial court to resolve that issue on a fuller record that may be developed on remand. Additionally, the trial court should make findings on defendant's ability to pay. *See N.J.S.A.* 2C:44-2.

We modify the judgment of the Appellate Division and remand the matter to the Law Division to determine whether to reimpose the order of restitution directing payment to the crime victim through the probation department, with the requirement that he reimburse the third party that has collaterally covered his losses.

*For modification and affirmance*—Chief Justice PORITZ, and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN and COLEMAN—7.

*Opposed*—None.