886 A.2d 643

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. JAMES LEWIS, DEFENDANT–APPELLANT.

Argued September 12, 2005—Decided December 8, 2005.

*Alison S. Perrone,* Designated Counsel, argued the cause for appellant (*Yvonne Smith Segars* Public Defender, attorney; *Ms. Perrone* and *William P. Welaj,* on the letter briefs).

*Michael J. Williams,* Deputy Attorney General, argued the cause for respondent (*Peter C. Harvey,* Attorney General of New Jersey, attorney).

Justice WALLACE, JR. delivered the opinion of the Court.

A person who possesses cocaine with intent to distribute while in, on, or within 500 feet of a public park is guilty of a crime of the second degree. *N.J.S.A.* 2C:35–7.1. The question before us is whether a defendant may be lawfully convicted under that statute if he is located in the park zone, but the drugs are not. We hold that a defendant may constructively possess a controlled dangerous substance that is located outside the zone while he is within the zone. We affirm the judgment of conviction.

I.

The State presented evidence demonstrating that on the evening of March 30, 2001, Camden Police Officer Edward Pinero was conducting surveillance in the area of Thorndyke Avenue and Marlton Pike, as a result of complaints about drug activity. Pinero was assigned to observe the area with binoculars while other officers waited nearby to assist him. At approximately 6:45 p.m., Pinero noticed defendant, who walked from Thorndyke Avenue and stood in a well-lit area. Subsequently, a man stopped his vehicle on the street, exited, and approached defendant. After conversing with the man, defendant walked to a nearby location,

retrieved a bag from under a log, removed some items from the bag, and returned to the man. Pinero noticed that the man gave defendant money in exchange for items from the bag. After the man drove away, Pinero radioed his backup to detain the suspected buyer, but the police were unsuccessful.

Pinero then observed a second male approach defendant. Defendant again walked to the nearby location, retrieved some items from the same bag, and returned to the waiting customer. After observing the second transaction, Pinero instructed the backup officers to detain defendant and the buyer. As the officers approached and identified themselves, defendant attempted to walk away. While he was walking away, defendant placed his arm around a woman passing by him, and dropped something to the ground. Police Officer Alicea placed defendant under arrest, walked to the area where defendant dropped something, and found three vials of suspected marijuana.

Pinero subsequently investigated the suspected stash location and found a storage bag containing twenty-three vials of marijuana and two clear sandwich bags, each containing twenty heat-sealed bags of suspected crack cocaine. The vials of marijuana found at the stash were identical to the three vials defendant had discarded. The area where Pinero observed defendant exchange a substance for money from the suspected buyer was within 500 feet of Eutaw Park. However, the location of the stash of marijuana and cocaine was not within 500 feet of the park.

At trial, Investigator Pete Slusser testified as an expert in narcotics packaging and distribution. He explained that the area of Marlton Pike and Thorndyke is a drug area. Based on hypothetical questions, he opined that someone conducting sales from a stash location as described in the testimony possessed those drugs for distribution. Additionally, he stated that the possession of forty bags of cocaine and twenty-six vials of marijuana was consistent with an intent to distribute rather than with personal consumption.

At the conclusion of the State's case, defendant moved for an acquittal of second-degree possession with intent to distribute cocaine in a park zone because the evidence established that the cocaine stash was not within 500 feet of a public park. The trial court denied the motion because there was sufficient evidence for the jury to conclude that defendant, who was within 500 feet of Eutaw Park, controlled the drugs located outside of the park zone.

The jury convicted defendant of fourth-degree possession of marijuana with intent to distribute, *N.J.S.A.* 2C:35-5a(1) and b(12) (count one); third-degree distribution or possession of marijuana with intent to distribute while within 500 feet of a public park, *N.J.S.A.* 2C:35-7.1 (count three); third-degree possession of cocaine, *N.J.S.A.* 2C:35-10a(1) (count four); third-degree possession of cocaine with intent to distribute, *N.J.S.A.* 2C:35-5a(1) and b(3) (count five); and second-degree distribution or possession of cocaine with intent to distribute while within 500 feet of a public park, *N.J.S.A.* 2C:35-7.1 (count seven).

At sentencing, the trial court granted the State's motion to impose an extended sentence because defendant was a persistent offender. With the prosecutor's consent, the court merged the convictions into the second-degree park zone offense and imposed an extended term of ten years with a four-year period of parole ineligibility.

Defendant raised four arguments on appeal. The Appellate Division found those arguments to be without merit and affirmed. In addressing defendant's claim that the park zone statute requires proof of actual possession of the drugs within the zone, the panel held that both constructive and actual possession were adequate for purposes of *N.J.S.A.* 2C:35-7.1. The panel concluded that the jury's finding that defendant constructively possessed the cocaine located outside of the zone while he was within the zone was sufficient to find him guilty of the park zone offense.

We granted defendant's petition for certification, limited to the issue of "whether defendant's conviction under *N.J.S.A.* 2C:35-7.1a can be based on a constructive possession of drugs located

outside the public park in which the drug transaction took place." 182 *N.J.* 428, 866 *A.*2d 985 (2005). We conclude that it can and affirm.

## II.

Defendant contends that under the express language of *N.J.S.A.* 2C:35–7.1, he cannot be guilty of possession with intent to distribute cocaine within a park zone because the cocaine was not located within that zone. He argues that our case law supports his position that the determinative factor for culpability is the location of the drugs, and not the location of the person. He urges that the Legislative intent in enacting the school zone statute, *N.J.S.A.* 2C:35–7, and the park zone statute, *N.J.S.A.* 2C:35–7.1, was to create drug-free zones around certain areas, and, therefore, the Legislature intended the statutes to apply only when drugs are physically located within those zones.

The State responds that the clear language of the statute demonstrates that the Legislature intended to impose added criminal responsibility on a defendant who is located in the zone and distributes or possesses cocaine with intent to distribute. Simply put, the State contends that the statute focuses on the location of defendant, not of the drugs. The State notes that the statute neither limits the type of possession—actual or constructive—that qualifies, nor does it require that the drugs be physically in the park zone. Moreover, the State argues that although our Supreme Court has explained that a drug's location is relevant, it has never held that the location of the defendant is less relevant. Further, the State recognizes that a defendant's drug possession must bear some direct relationship to the zone, and not be so divorced of any nexus such that a person cannot be fairly said to have violated the statute.

## III.

Both defendant and the State contend that the legislative intent behind *N.J.S.A.* 2C:35–7.1 supports their respective positions. *N.J.S.A.* 2C:35–7.1a provides in pertinent part:

Any person who violates subsection a. of *N.J.S.* 2C:35–5 by distributing, dispensing or possessing with intent to distribute a controlled dangerous substance or controlled substance analog *while in, on or within 500 feet of the real property comprising* a public housing facility, a public park, or a public building is guilty of a crime of the second degree, except that it is a crime of the third degree if the violation involved less than one ounce of marijuana.

[ (emphasis added).]

The applicable portion of *N.J.S.A.* 2C:35–5a(1) makes it unlawful for any person knowingly or purposely "[t]o manufacture, distribute or dispense, or to possess or have under his control with intent to manufacture, distribute or dispense, a controlled dangerous substance or controlled substance analog."

■ Our goal in construing a statute "is to discern and effectuate the Legislature's intent." *State v. Brannon,* 178 *N.J.* 500, 505, 842 *A.*2d 148 (2004). We start by considering the plain language of the statute. *State v. Ivory,* 124 *N.J.* 582, 585, 592 *A.*2d 205 (1991). If the language is clear, we interpret the statute consistent with its plain meaning. *Ibid.* If the meaning of the text is ambiguous, we construe a criminal statute in favor of the defendant. *State v. Reiner,* 180 *N.J.* 307, 311, 850 *A.*2d 1252 (2004). Nevertheless, in interpreting a criminal statute, "whatever be the rule of construction, it is subordinate to the goal of effectuating the legislative plan as it may be gathered from the enactment 'when read in the full light of its history, purpose and context.' " *State v. Gill,* 47 *N.J.* 441, 444, 221 *A.*2d 521 (1966) (quoting *Lloyd v. Vermeulen,* 22 *N.J.* 200, 204, 125 *A.*2d 393 (1956)). Further, a court should strive to avoid statutory interpretations that "lead to absurd or unreasonable results." *Ibid.*

The Code of Criminal Justice specifically declares that "when the language [of a provision] is susceptible of differing construction it shall be interpreted to further the general purposes stated in this section and the special purposes of the particular provision involved." *N.J.S.A.* 2C:1–2c; *See also State v. Hill,* 155 *N.J.* 270, 275 n. 2, 714 *A.*2d 311 (1998); *State v. Bridges,* 131 *N.J.* 402, 406–07, 621 *A.*2d 1 (1993); *Ivory, supra,* 124 *N.J.* at 586, 592 *A.*2d 205 (1991); *State v. Maguire,* 84 *N.J.* 508, 514, 423 *A.*2d 294 (1980).

In enacting the Comprehensive Drug Reform Act of 1986, the Legislature declared its "intention ... to provide for the strict punishment, deterrence and incapacitation of the most culpable and dangerous drug offenders" stating "[i]t is also the policy of this State to afford special protection to children from the perils of drug trafficking...." *N.J.S.A.* 2C:35–1.1c; *Bridges, supra,* 131 *N.J.* at 407, 621 *A.*2d 1; *see Official Commentary to the Comprehensive Drug Reform Act (Laws 1987, Chapter 106),* 9 *Crim. Just. Q.* 149, 157 (Fall 1987) ("It is thus incumbent upon drug traffickers to ascertain their proximity to schools [and public parks] and remove their illegal operations and activities from these specially protected areas...."). The purpose of *N.J.S.A.* 2C:37–7 (school zone) and *N.J.S.A.* 2C:35–7.1a (public park zone) is essentially the same: to protect those, predominantly children, in and around schools and public parks from exposure to the drug culture and perils of drug trafficking. In furtherance of that purpose, the Legislature mandated severe punishment for those who possess or distribute drugs in the safety zones established by those statutes.

The plain meaning of *N.J.S.A.* 2C:35–7.1a is that anyone violating *N.J.S.A.* 2C:35–5 by distributing or "possessing with intent to distribute a controlled dangerous substance or controlled substance analog while in, on or within 500 feet" of a public park is guilty of a crime of the second degree. *N.J.S.A.* 2C:35–7.1a. Thus, we must consider *N.J.S.A.* 2C:35–5 and the law on possession.

*N.J.S.A.* 2C:35–5 makes it unlawful "[t]o manufacture, distribute or dispense, or to possess or have under his control with intent to manufacture, distribute or dispense, a controlled dangerous substance or controlled substance analog." The Code declares that "[p]ossession is an act, within the meaning of this section, if the possessor knowingly procured or received the thing possessed or was aware of his control thereof for a sufficient period to have been able to terminate his possession." *N.J.S.A.* 2C:2–1c. Recently, we stated that

an object may be actually or constructively possessed. *State v. Schmidt,* 110 *N.J.* 258, 270, 540 *A.*2d 1256, 1262 (1988); *State v. Stewart,* 96 *N.J.* 596, 603, 477 *A.*2d 300, 303–04 (1984). A person actually possesses an object when he has physical or

manual control of it. *State v. Brown*, 80 *N.J.* 587, 597, 404 *A.*2d 1111, 1116 (1979). A person constructively possesses an object when, although he lacks "physical or manual control," the circumstances permit a reasonable inference that he has knowledge of its presence, and intends and has the capacity to exercise physical control or dominion over it during a span of time. *Schmidt, supra*, 110 *N.J.* at 270, 540 *A.*2d at 1262.

[*State v. Spivey*, 179 *N.J.* 229, 236–37, 844 *A.*2d 512 (2004).]

Although we have not addressed a case in which a defendant evidences intent to distribute cocaine within a restricted zone and the drugs are located outside of the zone, in related situations we have not hesitated to follow the intent of the statute. In *Ivory, supra*, the defendant was riding his bicycle through a school zone when a police officer arrested him pursuant to an arrest warrant. 124 *N.J.* at 584, 592 *A.*2d 205. A search of defendant revealed 16.98 grams of cocaine and an uncertain amount of marijuana. *Ibid.* The defendant was charged with multiple drug offenses, including possession with intent to distribute in a school zone. *Ibid.* He pled guilty to the school zone violation and received a four-year sentence with a one-year parole bar. *Id.* at 585, 592 *A.*2d 205. The defendant appealed, arguing that the "statute's scope is limited to those intending to distribute drugs within 1,000 feet of school property." *Ibid.* The Appellate Division rejected that argument and we granted certification. *Ibid.* We held that "the criminal conduct (possession with intent to distribute, contrary to *N.J.S.A.* 2C:35–5a) occurred while on or within 1,000 feet of school property," and that the defendant "need not be shown to have any specific intent to distribute the drugs at any given location." *Id.* at 593–94, 592 *A.*2d 205. In reaching that conclusion, we explained that

the Legislature intended to create drug-free zones of safety where children could be, learn and play free of the potential infection of drugs. One contaminating these safety zones is liable, regardless of whether he or she intended to infect those here or others elsewhere. Such a stance is legitimate and warranted in the effort to prevent primary and secondary school students in this state from using drugs. The statute presents a rational and reasonable approach by the Legislature to reduce drugs around schools.

[*Id.* at 594–95, 592 *A.*2d 205.]

In *Spivey, supra,* we addressed the issue of constructive possession in the context of *N.J.S.A.* 2C:39–4.1a, which penalizes the possession of a firearm while in the course of committing certain drug offenses, such as possession with intent to distribute a controlled dangerous substance within 500 feet of a park zone. 179 *N.J.* at 239, 844 *A.*2d 512. The defendant was arrested outside his apartment building while the police searched his apartment and found a sizeable stash of drugs and a loaded weapon in the kitchen. *Id.* at 232, 844 *A.*2d 512. The defendant's apartment was located in a park zone, and the State charged him with possession of a firearm while in the course of possessing a controlled dangerous substance with intent to distribute within 500 feet of a public park, a second-degree offense. *Ibid.* The defendant was convicted of that offense along with other related charges and appealed. *Id.* at 234–35, 844 *A.*2d 512. The Appellate Division affirmed his convictions and we granted certification. *Id.* at 235, 844 *A.*2d 512.

Before us, the defendant argued that the State failed to prove he "actually possessed the weapon or constructively possessed it in close physical proximity to his person at the time he committed the predicate drug offense." *Ibid.* After stating that a person may have actual or physical possession of an object, we found sufficient evidence for the jury to find that the defendant constructively possessed the firearm and drugs. *Id.* at 237, 844 *A.*2d 512. Next, we considered whether the evidence was adequate to support a jury finding that the defendant possessed the firearm "while in the course of committing" the drug offense in light of the defendant's arrest outside his apartment. *Ibid.* We concluded it was, declaring that

> [t]he statutory language does not suggest that the weapon must be in close proximity to defendant to constitute a violation of *N.J.S.A.* 2C:39–4.1a. Had the statute read "armed with a firearm while in the course of committing" a specified crime, the outcome might be different. . . . The language 'while in the course of committing' does suggest, however, a temporal and spatial link between the possession of the firearm and the drugs that defendant intended to distribute. . . . The closer in proximity a firearm is to drugs, the stronger and more natural the inference that the two are related to a common purpose.

[*Id.* at 239–40, 844 *A.*2d 512.]

In the present matter, we reject defendant's contention that a conviction under *N.J.S.A.* 2C:35–7.1 only may be sustained if the drugs are actually located within the park zone. We do not read the statute to be so limited. The Legislature did not restrict the reach of the statute to those who physically possess the drugs within the zone. The plain language of *N.J.S.A.* 3C:35–7.1 instructs that any person who violates *N.J.S.A.* 2C:35–5 "while in, on or within 500 feet" of a public park is guilty of a second-degree crime. That is, the declaration that a person possessing drugs with the intent to distribute "while in, on or within" a park zone will be subject to greater punishment demonstrates that the Legislature concentrated on the person's location.

Moreover, the statute does not limit the type of possession—actual or constructive—that qualifies, nor does it expressly require that the drugs possessed by defendant be in, on, or within 500 feet of the public area. Our jurisprudence recognizes that possession may be actual or constructive. *Spivey, supra,* 179 *N.J.* at 239, 844 *A.*2d 512. We find nothing in the plain language or the history of the statute that would lead us to conclude that the Legislature sought to limit the statute to actual possession of the drugs in the park zone. We conclude that a defendant who conducts a portion of a scheme to distribute drugs while in, on, or within 500 feet of a public park violates *N.J.S.A.* 2C:37–7.1, whether the drugs are actually possessed on the person or the drugs are constructively possessed and located outside the park zone.

In our view, a contrary result would influence drug dealers to distribute controlled dangerous substances within a school or park zone, but to maintain their stash of drugs outside the zone. Surely, the Legislature did not intend that type of conduct to escape the harsher penalties for drug activity within a park zone or a school zone.

The State concedes, and we agree, that the result we reach does not preclude a defendant from alleging that the drugs recovered outside the park zone lacked a sufficient nexus to the park zone to

constitute a violation pursuant to *N.J.S.A.* 2C:35–7.1a. There must be some connection between the drugs and the zone to permit a reasonable inference that defendant constructively possessed the drugs with intent to distribute them within the drug-free zone. Such a nexus is not limited by the location of the drugs, although the inference to be drawn may be stronger the closer the drugs are to the zone. *See Spivey, supra,* 179 *N.J.* at 237–40, 844 *A.*2d 512. In any event, a defendant's constructive possession of a drug must bear some direct relationship to the drug-free zone and not be so divorced of any nexus that he or she cannot be fairly said to have violated *N.J.S.A.* 2C:35–7.1.

For example, a person could constructively possess drugs in his apartment one mile away. However, if he goes to a public park or a school zone to exercise, there is not an obvious connection between the constructive possession of the drugs in his apartment and his presence within the zone. On the other hand, the nexus exists if the defendant conspires or attempts to distribute or sell drugs within the zone, even if the drugs are not within the zone and delivery is intended outside the zone.

Here, there was evidence that defendant, on two occasions, met with a purchaser in the park zone, walked to his stash location outside the zone, and returned to complete the transaction. The kind of drug sold in the first transaction was unknown, while in the second transaction the drug was marijuana. The evidence that the nearby stash contained both marijuana and cocaine supported the reasonable inference that, depending on the drug requested by the buyer, defendant intended to distribute cocaine and marijuana within the park zone.

Further, the State presented the expert testimony of Investigator Slusser that someone conducting sales from a stash of the quantity in this matter possessed those drugs for distribution. The physical and temporal proximity of defendant's cocaine and marijuana stash were sufficient for the jury to conclude that defendant constructively possessed the cocaine while in the park zone. Therefore, we conclude that defendant, who sold drugs in a

park zone from a stash located outside that zone, violated *N.J.S.A.* 2C:37–7.1a.

We affirm the judgment of the Appellate Division.

Justice LaVECCHIA, dissenting.

Defendant was charged with possession with intent to distribute a controlled dangerous substance "in, on or within 500 feet of a public park." The majority has judicially expanded the five-hundred-foot public park zone to include the area where defendant's stash of drugs was found in order to justify defendant's conviction. Because I cannot accept the strained interpretation of *N.J.S.A.* 2C:35–7.1(a) that allows the majority to uphold defendant's park zone conviction, I must dissent.

I agree with the majority that there was sufficient evidence to support defendant's conviction for his distribution of marijuana, for the amount of marijuana that he possessed on his person when he was within five hundred feet of a public park, and for the amount of marijuana and cocaine he constructively possessed, stored in his stash. For his actions within a public park zone and for the amounts of marijuana and cocaine found on his person and that he constructively possessed, defendant was convicted of fourth-degree possession of marijuana with intent to distribute, contrary to *N.J.S.A.* 2C:35–5a(1) and b(12) (count one); third-degree distribution or possession of marijuana with intent to distribute while within 500 feet of a public park, contrary to *N.J.S.A.* 2C:35–10a(1) (count three); third-degree possession of cocaine, contrary to *N.J.S.A.* 2C:35–10a(1) (count four); and third-degree possession of cocaine with intent to distribute, contrary to *N.J.S.A.* 2C:35–51(1) and b(3) (count five). The majority and I part company in this appeal because the Court is willing to uphold an additional conviction for second-degree distribution or posses-sion of cocaine with intent to distribute while within five hundred feet of a public park zone, contrary to *N.J.S.A.* 2C:35–7.1 (count seven), when the cocaine involved in that second-degree conviction

was not *"in, on or within* 500 feet of [a public park]." *N.J.S.A.* 2C:35–7.1 (emphasis added).

The statute calls for possession of the contraband to be within the five-hundred-foot zone protecting a public park. *Ibid.* The stash of cocaine on which rests defendant's second-degree park zone conviction was located outside of the five-hundred-foot zone. Nevertheless, the majority upholds that conviction based on a novel application of constructive possession that relocates the constructively possessed cocaine to where defendant is situated. The majority cannot cite to a single case in this State where a thing, constructively possessed, is deemed to be possessed at a location other than where the thing itself is located. At oral argument, the State conceded that it could not cite to a single case to support that proposition either.

The novel spin that the majority gives to the principle of constructive possession is not supported by *State v. Spivey,* 179 *N.J.* 229, 844 *A.*2d 512 (2004). In *Spivey,* the defendant's apartment was located less than five hundred feet from a public park. *Id.* at 233, 844 *A.*2d 512. In searching the defendant's apartment pursuant to a warrant that authorized a search of both the defendant's person and home, the police found a sizable amount of drugs, drug paraphernalia, and a loaded firearm. *Ibid.* The firearm, and some marijuana with drug paraphernalia, were found in different locations within the kitchen. *Ibid.* The issue before the Court was whether there was sufficient evidence to convict the defendant under *N.J.S.A.* 2C:39–4.1a., for possessing a firearm "while in the course of" possessing with intent to distribute drugs within five hundred feet of a public park. *Id.* at 232, 844 *A.*2d 512. Although the defendant was arrested while standing on the sidewalk outside his apartment, the Court's analysis did not focus on where the defendant was located; rather, our analysis and holding focused on the relationship between the location of the drugs and the firearm, in the context of determining the "while in the course of" element of 2C:39–4.1a. We upheld Spivey's conviction based on the premise that he constructively possessed the items where they

were found in his home. It certainly was not the case that under the Court's analysis either the drugs or the firearm had to be moved from their actual location to another place where the defendant happened to be found when arrested.

*Spivey* simply provides no support for the approach to constructive possession taken today by the Court. From my perspective, saving one count of this defendant's multiple convictions is of small significance. What looms large is the uncertainty that now will be cast over where a constructively possessed item is possessed. Is the location of an item constructively possessed now a movable target, sometimes where the person is located and other times where the item actually is? The location of a constructively possessed item should not be made susceptible to manipulation to maximize criminal penalties. I believe the better approach is to follow the plain language of the statute itself. Even if I were to assume that there is some room to argue ambiguity, I would conclude that the rule of lenity favors defendant because neither the language nor legislative history of this statute supports the majority's conclusion.

The statute at issue here, *N.J.S.A.* 2C:35–7.1(a), provides that [a]ny person who violates subsection a. of N.J.S.2C:35–5 by distributing, dispensing or possessing with intent to distribute a controlled dangerous substance or controlled substance analog while in, on or within 500 feet of the real property comprising a public housing facility, a public park, or a public building is guilty of a crime of the second degree, except that it is a crime of the third degree if the violation involved less than one ounce of marijuana.

Subsection a. of *N.J.S.A.* 2C:35–5 provides:

Except as authorized by P.L.1970, c. 226 (C.24:21–1 et seq.), it shall be unlawful for any person knowingly or purposely:

(1) To manufacture, distribute or dispense, or to possess or have under his control with intent to manufacture, distribute or dispense, a controlled dangerous substance or controlled substance analog; or

(2) To create, distribute, or possess or have under his control with intent to distribute, a counterfeit controlled dangerous substance.

Under the rules of statutory construction, if the language is clear and unambiguous on its face and admits of only one reasonable meaning and manner of application, then those unambiguous

words are enforced consistent with their literal meaning. *State v. Reiner*, 180 *N.J.* 307, 311, 850 *A.2d* 1252 (2004). If, however, a statute's text lends itself to more than one reasonable interpretation, courts may consult extrinsic sources in the quest to ascertain and implement legislative intent. *Ibid.* When extrinsic sources do not resolve the ambiguity, courts are expected to employ applicable canons of construction that in the context of a penal statute call into play the rule of lenity. *Id.* at 318, 850 *A.2d* 1252. The rule of lenity requires that penal statutes be strictly construed and that ambiguous language be read in favor of a criminal defendant. *State v. Livingston*, 172 *N.J.* 209, 217–18, 797 *A.2d* 153 (2002).

Aside from my difference with the majority about where a constructively possessed item is possessed, the critical disagreement in this matter turns on application of the term "possessing" contained in *N.J.S.A.* 2C:35-7.1. Despite the plain language that calls for the possession of the contraband to be "in, on or within" the public park zone, a majority of this Court uses its novel approach to constructive possession to get the drugs within the park zone. Consistent with that view, a defendant can be prosecuted under the statute if he is physically within the proscribed zone but constructively possesses drugs that are located outside the proscribed zone. Several textual arguments have been advanced for, and against, that approach.

If one were to agree that reasonable interpretations of *N.J.S.A.* 2C:35-7.1 have been advanced by both parties, rendering it unclear whether the Legislature intended to make a defendant standing within a drug-free zone culpable for constructively possessing drugs located outside of the proscribed zone, resort may be had to extrinsic aids to resolve the ambiguity. *See State v. Reiner*, *supra*, 180 *N.J.* at 314, 850 *A.2d* 1252. Here, however, extrinsic sources do not cure the specific ambiguity with which we are faced.

*N.J.S.A.* 2C:35-7.1 closely resembles and was modeled after *N.J.S.A.* 2C:35-7 (creating drug-free school zones). In general respects, both enactments share a similar purpose: to create

drug-free zones around certain areas by imposing enhanced penalties upon those who engage in drug activities within those areas. *See State v. Parker,* 335 *N.J.Super.* 415, 424, 762 *A.*2d 690 (App.Div.2000) (recognizing legislative intent in enacting both 2C:35–7 and 2C:35–7.1 was to reduce presence of drugs within protected zones). In enacting the Comprehensive Drug Reform Act of 1986, the Legislature explained its intent in the statute's opening section. *N.J.S.A.* 2C:35–1.1(a)–(c). Besides expressing its abhorrence of drug activity on or near school property and its desire to enhance the punishment of those who engage in drug distribution within the protected zones, the Legislature emphasized its desire to deter persons from the prohibited conduct through the use of "stern" enhanced penalties, citing "the need to ensure a uniform, consistent and predictable system for the sentencing of convicted offenders." *N.J.S.A.* 2C:35–1.1(a). That said, nowhere does *N.J.S.A.* 2C:35–7.1 state that its enhanced penalties apply to the constructive possession of drugs not actually located in a protected zone.[1] The vagueness of such an elastic notion of the physical parameters of the enhanced-penalty zone is problematic. The majority acknowledges the concerns inherent in a broad application of its holding and superimposes a "totality of the circumstances" factual analysis in this type of possession case. It remains to be seen in future cases just how far drug-free zones can be stretched under the majority's framework to include contraband physically located outside of the perimeters expressly delineated by statute.

In my view, merely because the legislative history contains strong support for the creation of drug-free zones does not mean that drugs physically located outside of those zones may be swept within the statute's reach. The statute describes clearly and

---

[1] Indeed, one could argue that such an interpretation of the statute renders superfluous the language "by distributing, dispensing or possessing with intent to distribute a controlled dangerous substance or controlled substance analog" contained in 2C:35–7.1, because that activity is already proscribed under 2C:35–5.

precisely ("500 feet") the area within which enhanced penalties will pertain. We presume an intent by the Legislature to avoid vagueness in penal statutes and, consequently, in respect of their application, because of the negative consequences of such imprecision. Vague laws may offend constitutional due process by failing to give adequate notice. *See State v. Valentin*, 105 *N.J.* 14, 18, 519 *A.*2d 322 (1987).

Although it is undoubtedly true that the legislative history surrounding the Comprehensive Drug Reform Act of 1986 evinces a strong legislative desire to wage an aggressive campaign against drug-related activity, that general intent is not enough. *Ibid.* (stating that "[p]enal laws cannot be extended by implication or intendment."). Nowhere in those materials is the answer to the precise question that this Court must now resolve: whether the Legislature intended to include within the purview of 2C:35–7.1 the prosecution of a person for a possessory offence under that statute when that person stands physically within the public park zone but constructively possesses drugs located outside of the statutorily defined drug-free zone. Because an examination of extrinsic sources does not resolve the question of whether the legislative prohibition applies in these circumstances, I am compelled to resort to the rule of lenity that requires that penal statutes be construed strictly and ambiguities be interpreted in favor of criminal defendants.

The rule of lenity "has at its heart the requirement of due process. No one shall be punished for a crime unless both that crime and its punishment are clearly set forth in positive law." *In re Suspension of DeMarco*, 83 *N.J.* 25, 36, 414 *A.*2d 1339 (1980). And, the canon serves the compelling function of preventing arbitrary and discriminatory enforcement. *See State v. Valentin, supra*, 105 *N.J.* at 18, 519 *A.*2d 322 (quoting *Grayned v. City of Rockford*, 408 *U.S.* 104, 108–09, 92 *S.Ct.* 2294, 2298–99, 33 *L.Ed.*2d 222, 227–28 (1972)). The rule of lenity and its requirement of strict construction in a defendant's favor is particularly apt when the statute at issue is a penalty enhancer. *See Deville v. State*,

383 *Md.* 217, 858 *A.*2d 484, 487–88 (2004) (construing Maryland's habitual drug offender statute strictly and explaining that "[w]hen there is doubt as to the Legislature's intent regarding the application of an enhanced penalty, the rule of lenity requires that any ambiguity within criminal statutes be interpreted in favor of the defendant.").

For all the foregoing reasons, I respectfully dissent. I would reverse defendant's conviction under *N.J.S.A.* 2C:35–7.1 (count seven). I would hold that the cocaine that defendant constructively possessed was located where the cocaine stash was kept and that, therefore, defendant cannot be convicted of possession of that cocaine under *N.J.S.A.* 2C:35–7.1. The statute does not apply when the drugs are not "in, on or within" the precise perimeter of the drug-free zones delineated in the act.

Justice ALBIN joins in this dissent.

*For affirmance*—Chief Justice PORITZ and Justices LONG, ZAZZALI, WALLACE, and RIVERA–SOTO—5.

*For reversal*—Justices LaVECCHIA and ALBIN—2.