# IN THE SUPREME COURT OF IOWA

No. 22–1144

Submitted February 21, 2024—Filed May 24, 2024

**STATE OF IOWA,**

Appellee,

vs.

**AMY LOIS RASMUSSEN,**

Appellant.

---

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Boone County, Stephen A. Owen, Judge.

The defendant seeks further review from the court of appeals decision affirming her sentence following a guilty plea. **DECISION OF COURT OF APPEALS AFFIRMED IN PART AND VACATED IN PART; DISTRICT COURT JUDGMENT REVERSED AND REMANDED WITH INSTRUCTIONS.**

Christensen, C.J., delivered the opinion of the court, in which all justices joined.

Martha J. Lucey, State Appellate Defender, and Maria Ruhtenberg (argued), Assistant Appellate Defender, for appellant.

Brenna Bird, Attorney General; Nick Siefert (argued) and Kyle Hanson (until withdrawal), Assistant Attorneys General; and Kelly Lynch, law student, for appellee.

**CHRISTENSEN, Chief Justice.**

The defendant's confrontation of three women outside of Boone City Hall turned physical, resulting in various injuries to all three. The defendant entered an *Alford* guilty plea to two counts of assault causing bodily injury for her attack on two of the three victims. In exchange, the State dismissed a related simple misdemeanor charge against the defendant involving the third victim under a separate case number. The district court rejected both parties' sentencing recommendations and sentenced the defendant to consecutive one-year sentences for each count. Additionally, in this case, it entered no-contact orders prohibiting the defendant's contact with the two victims of assault causing bodily injury. It also entered a no-contact order protecting the victim in the separate simple misdemeanor case just before dismissing said case.

The defendant contests her sentence on appeal, arguing that the district court considered improper factors and failed to consider other relevant factors in fashioning her sentence. She also challenges the district court's jurisdiction to enter a no-contact order regarding the victim in the dismissed simple misdemeanor case, arguing that it constitutes an illegal sentence. We directed the case to the court of appeals, which affirmed the defendant's sentence. On further review, we affirm the defendant's conviction and sentence as it concerns the defendant's consecutive one-year sentences and the no-contact orders involving the two victims of assault causing bodily injury. However, the no-contact order in the dismissed case is void, and it is not for us to act as a sentencing court to determine whether the victim in that case equally qualifies as a victim in this case to warrant protection through a no-contact order. Therefore, we remand that issue to the district court for a hearing solely on that matter.

## I. Background Facts and Proceedings.

On November 29, 2021, the defendant, Amy Rasmussen, confronted Victim 1 while she was talking with Victims 2 and 3[1] on the steps outside of Boone City Hall following a city council forum. Victim 1 declined the defendant's request to speak privately, but the defendant continued to yell and make threats, telling Victim 1 that she would be "hog chow" the next time she posted about the defendant's son or husband on social media. As the defendant continued to invade Victim 1's space, Victim 3 attempted to defuse the situation by placing her hand on the defendant's shoulder and asking her to stop. The defendant responded, "Don't you fucking touch me," and elbowed Victim 3 in the head to get her out of the way.

In the meantime, Victim 2 took out her cell phone, thinking she might record the incident or need to call for help. Upon seeing this, the defendant told her, "Go ahead[,] record me," and then pushed Victim 2 over a retaining wall. She proceeded to attack Victim 1, causing her to fall to the ground. As Victim 1 was on the ground, the defendant jumped on top of her and struck her multiple times before kicking her. When police arrived, the defendant indicated that she had a personal feud with Victim 1 and admitted to "kicking her ass."

The State charged the defendant with two counts of assault causing bodily injury in violation of Iowa Code sections 708.1(2) and 708.2(2) (2021), both serious misdemeanors, and one count of simple assault, a simple misdemeanor in violation of Iowa Code section 708.2(6). The two counts of assault causing bodily injury were for the defendant's physical attacks on Victims 1 and 2, and the

---

[1]From the evidence in the record, it is clear that all three women on the receiving end of the defendant's confrontation are victims in the sense that they were harmed by the defendant's actions. Our use of the "victim" label is not a legal conclusion that Victim 3 constitutes a "victim" under Iowa Code section 664A.1(3) (2021). Rather, we use it to distinguish the individuals while protecting their identity.

simple assault charge was for her physical attack on Victim 3. It also charged the defendant with harassment in the third degree and disorderly conduct—simple misdemeanors. As nonindictable offenses, the State filed all three simple misdemeanors under a separate case number from this one involving serious misdemeanors. *See* Iowa R. Crim. P. 2.4(2) ("Offenses other than simple misdemeanors may be prosecuted to final judgment either on indictment or on information as provided in rule 2.5."); *State v. Doe*, 903 N.W.2d 347, 349 (Iowa 2017). That same day, the district court entered no-contact orders prohibiting the defendant from contact with any of the three victims to "remain in effect until modified or terminated by further written Order of th[e] Court, until the case is dismissed, or until sentencing." (Emphasis omitted.)

The defendant and the State later reached a plea agreement in which the State agreed to dismiss the simple misdemeanors in exchange for the defendant's *Alford* guilty plea to the two serious misdemeanor counts of assault causing bodily injury. The agreement provided that the parties were free to argue for an appropriate sentence. At the sentencing hearing, the State advocated for concurrent one-year terms of incarceration on each of the two counts—with all but seven days suspended—followed by two years of probation. Additionally, it asked the district court to extend the existing no-contact orders to prohibit the defendant from contact with all three victims for a period of five years. Because the defendant's charge regarding Victim 3 was one of the simple misdemeanor cases to be dismissed pursuant to the parties' agreement, the State requested "that the No Contact Order from the simple misdemeanor [involving Victim 3] be transferred in one way or the other to this case so that the No Contact Order can continue for [Victim 3]."

The defendant sought a deferred judgment. Alternatively, she asked the court to suspend any sentence it imposed and place her on probation with any

probation periods and sentences to run concurrently. She also conceded that she was "not contesting" the extension of the no-contact orders, including the order involving Victim 3 in the case being dismissed. However, she explained that "this is a small town . . . and there are many activities that go on in town, Pufferbilly Days, the county fair, First Friday, various town celebrations." Thus, she requested the no-contact orders only last one year instead of five years and "allow both [the defendant] and the victims to be able to be at those things, as long as they don't interact with each other."

Each of the three victims submitted a written victim-impact statement and read the same during sentencing. In Victim 2's statement, she provided a screenshot of the defendant's social media post following the altercation that declared, "You run pretty well for a gimp!" and included an address and time that corresponded with Victim 2's location, where she was walking with a cane due to her injuries from the defendant's attack. The defendant filed various letters from others supporting her. Nonetheless, when the district court offered her the right "to make a statement in mitigation of punishment," the defendant responded, "I have nothing to say at this time, Your Honor."

The district court sentenced the defendant to one year on each count to run consecutively for a total indeterminate term of two years in prison and dismissed the simple misdemeanor charges. It also declared at sentencing that "[t]he No Contact Orders in these proceedings will be extended for a period of five years . . . [and] will be entered in each of the three instances, with a special note that the protected parties are protected under those orders." Notably, the district court entered the no-contact order prohibiting the defendant's contact with Victim 3 in the separate simple misdemeanor case number that it subsequently dismissed. It entered the no-contact orders involving Victims 1 and 2 in the present case.

On appeal, the defendant challenges her sentence and the district court's ability to impose a no-contact order related to the dismissed simple misdemeanor charge involving Victim 3. We transferred the appeal to the court of appeals, which affirmed the defendant's sentence and the challenged no-contact order. We granted the defendant's application for further review.

**II. Analysis.**

The defendant points to various ways in which the district court abused its discretion in sentencing her. She also challenges the district court's authority to enter the no-contact order involving Victim 3. In addressing these claims, we note that the defendant has good cause to appeal following her *Alford* guilty plea under Iowa Code section 814.6 because she is challenging her sentence rather than the plea itself. *See State v. Damme*, 944 N.W.2d 98, 105 (Iowa 2020) ("We hold that good cause exists to appeal from a conviction following a guilty plea when the defendant challenges his or her sentence rather than the guilty plea."). And although the defendant contests multiple sentencing errors, "[w]e decline to parse or bifurcate the specific sentencing errors alleged when determining good cause." *State v. Wilbourn*, 974 N.W.2d 58, 66 (Iowa 2022). Thus, we have jurisdiction over all of the defendant's claims because she has crossed the good-cause threshold on at least one ground for appeal. *See id.*

**A. The District Court's Sentencing Considerations.** The defendant contests how the district court reached its sentencing decision, arguing some of the factors it considered were improper and that it did not consider other factors enough or at all. We review this challenge for an abuse of discretion, beginning with "a strong presumption" that the defendant's sentence is valid because it is within the statutory limit. *Damme*, 944 N.W.2d at 105–06. In doing so, we afford the sentencing judge significant latitude. *Id.* at 106. Our task is to determine whether the district court based its sentencing decision on grounds that were

clearly untenable or unreasonable. *Id.* If the defendant shows that the district court used an improper consideration, resentencing is required. *Id.* Nevertheless, that is not the case here, as the record clearly refutes the defendant's claims.

For example, we can easily dispose of the defendant's first argument that Victim 3 did not qualify as a "victim" for the purpose of providing a victim-impact statement, and thus, the district court improperly considered Victim 3's impact statement. *See* Iowa Code § 915.10(3)–(4) (outlining the rights of crime victims, including who qualifies as a "victim" and who may provide victim-impact statements). Regardless of whether Victim 3 qualified as a "victim" under the circumstances, the district court explained that it would only consider Victim 3's victim-impact statement "as it concerns the [separate] case regarding [Victim 3]," which was later dismissed as part of the plea agreement. The district court stressed this again before announcing its sentencing decision, declaring that "the Court considers only those matters for which [the defendant] has entered her Alford pleas, that being Count I and II of the Trial Information," which did not involve Victim 3. Absent proof to the contrary, we take the district court's statements "at face value" and have no reason to believe the district court abused its discretion by improperly considering Victim 3's statement. *State v. Sailer*, 587 N.W.2d 756, 763–64 (Iowa 1998) (affirming sentence when the defendant did not establish the district court's reliance on improper factors to overcome the presumption in favor of the sentence).

Nor can we say the district court abused its discretion by relying on unfounded allegations from Victims 1 and 2's victim-impact statements, which included allegations that the defendant was continually harassing the victims before the assault and that the defendant has a history of domestic violence. Again, nothing in the record indicates the district court relied on those unproven allegations. But the record does indicate that the district court relied on facts to

show that the defendant mocked Victim 2's injuries on social media after the attack. *See State v. Fetner*, 959 N.W.2d 129, 135 (Iowa 2021) ("We have previously explained that a sentencing court cannot consider unproven or unprosecuted offenses in fashioning a defendant's sentence unless the defendant admits them or facts are presented to prove them."). Specifically, Victim 2 offered a screenshot of the defendant's social media post in which she stated, "You run pretty well for a gimp!" and included an address and time that corresponded with where Victim 2 had been walking with a cane due to the injuries the defendant inflicted upon her.

We have previously emphasized that a defendant's lack of remorse is an important consideration in determining a sentence, and this lack of remorse can be evidenced through any of the defendant's admissible statements or "other competent evidence properly admitted at the sentencing hearing." *State v. West Vangen*, 975 N.W.2d 344, 355 (Iowa 2022) (quoting *State v. Knight*, 701 N.W.2d 83, 88 (Iowa 2005)). That includes victim-impact statements. *See* Iowa Code § 915.21(1) (authorizing victims to provide victim-impact statements to the court orally or in writing at sentencing). Here, that evidence includes the screenshot Victim 2 provided of the defendant's social media post. As the district court explained, it also includes the defendant's statement to the police right after the attack that she "kicked their ass," and "her demeanor in court." Notably, when the district court offered the defendant the opportunity to make a statement in mitigation of punishment, the defendant responded that she had "nothing to say." Therefore, we conclude that the district court properly considered the defendant's lack of remorse in fashioning her sentence.

Finally, the defendant maintains that "the [district] court focused singularly on the effect of the crimes on the victims without regard to the other factors that the court is supposed to consider." According to the defendant, these factors

include the fact that she was fifty-five years old with no criminal history and the nine letters written in support of her—all of which the defendant views as mitigating. The record does not support this argument.

Iowa Code section 901.5 tasks the district court with determining which sentencing option "is authorized by law for the offense" and "which of them or which combination of them, in the discretion of the court, will provide maximum opportunity for the rehabilitation of the defendant, and for the protection of the community from further offenses by the defendant and others." This determination requires it to consider multiple factors, "including the nature of the offense, the attending circumstances, the age, character and propensity of the offender, and the chances of reform." *Damme*, 944 N.W.2d at 106 (quoting *State v. Formaro*, 638 N.W.2d 720, 725 (Iowa 2002)). Additionally, before deferring judgment or suspending sentence, as the defendant requested, the district court must "consider the defendant's prior record of convictions or deferred judgments, employment status, family circumstances, and any other relevant factors, as well as which of the sentencing options would satisfy the societal goals of sentencing." *Id.* (emphasis omitted) (quoting *Formaro*, 638 N.W.2d at 725).

The district court did not abuse its discretion in sentencing the defendant to one year on each serious misdemeanor to be served consecutively for a total indeterminate term of two years in prison. In doing so, the district court provided an individualized explanation for the sentence it was imposing. Contrary to the defendant's claims, the district court considered the defendant's age and absence of prior criminal history. It also reported that the defendant "submitted a number of exhibits from those who have known her here in the community, in particular her work in the community. The court has considered all of the matters before it."

Likewise, although it acknowledged "the thoughtfulness by which" the parties presented their sentencing recommendations, the district court gave thorough reasons for rejecting not only the defendant's recommendations, but the State's as well, in favor of the maximum sentence. Those reasons boiled down to "the nature of the offense, the effect it[] had on the community, the violence, [and] her apparent pride in the offense and her lack of remorse." "The test for whether a sentencing court abused its discretion is not whether we might have weighed the various factors differently," but whether the sentence was based on unreasonable or untenable grounds. *State v. Gordon*, 998 N.W.2d 859, 863 (Iowa 2023). Nothing in the record suggests that the defendant's sentence was based on unreasonable or untenable grounds, so we affirm her sentence.

**B. The District Court's Authority to Impose a No-Contact Order on a Dismissed Charge.** Although the defendant acknowledges she did not contest the no-contact order involving Victim 3 at the sentencing hearing, she challenges it on appeal as an illegal sentence, which we review for correction of errors at law. *State v. Petty*, 925 N.W.2d 190, 195 (Iowa 2019). As a preliminary matter, we note that the no-contact order is subject to review on direct appeal even though the district court entered it in the dismissed simple misdemeanor case because the district court incorporated it into the sentencing order in this case. *Cf. Formaro*, 638 N.W.2d at 727 (distinguishing situations in which the terms and conditions of bail are subject to challenge on direct appeal because they are in the judgment and sentence from those situations in which the ruling must be separately appealed because the district court addressed bail following its entry of the judgment and sentence).

"Jurisdiction is power to declare the law," and is conferred upon the courts through a constitution or legislative enactment. *State v. Rutherford*, 997 N.W.2d 142, 144 (Iowa 2023) (quoting *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514

(1868)); *see also State v. Wiederien*, 709 N.W.2d 538, 540 (Iowa 2006). Moreover, "[t]he legislature possesses the inherent power to prescribe punishment for crime, and the sentencing authority of the courts is subject to that power." *State v. Iowa Dist. Ct.*, 308 N.W.2d 27, 30 (Iowa 1981). Iowa Code section 664A.5 allows the district court to "enter a no-contact order or continue the no-contact order already in effect for a period of five years from the date the judgment is entered" when a defendant is convicted of a public offense as defined in section 701.2. The defendant argues that the no-contact order entered in the dismissed simple misdemeanor case involving Victim 3 is not authorized by statute, and thus is void, because there was no conviction in that case.

The defendant is correct in stating that the no-contact order entered in the dismissed simple misdemeanor case involving Victim 3 is an illegal sentence and void. We recently said as much in *State v. T.J.W.*, 2 N.W.3d 853, 859 (Iowa 2024), in which we held that a district court lacked jurisdiction to enter a restitution order after it dismissed and expunged the lone criminal charge. And even though the defendant did not contest the no-contact order at the time of sentencing, it is well established that an illegal sentence cannot be affirmed on the basis of contract, waiver, estoppel, or detrimental reliance. *State v. Woody*, 613 N.W.2d 215, 218 (Iowa 2000) (en banc) ("Neither party may rely on a plea agreement to uphold an illegal sentence."); *State v. Austin*, 503 N.W.2d 604, 607 (Iowa 1993) ("Our case law has provided that criminal sentences not authorized by statute are void and cannot be permitted to stand."); *State v. Draper*, 457 N.W.2d 600, 605 (Iowa 1990) ("[W]hen a sentencing court departs . . . from the legislatively authorized sentence for a given offense, the pronounced sentence is a nullity subject to correction . . . ."); *State v. Ohnmacht*, 342 N.W.2d 838, 842 (Iowa 1983) (holding that neither the concepts of estoppel nor waiver preclude the correction of an illegal sentence); *State v. Peterson*, 327 N.W.2d 735, 738 (Iowa 1982) (en

banc) (rejecting contention that "estoppel mandated the enforcement of an invalid sentence"); *State v. Strable*, 313 N.W.2d 497, 499 (Iowa 1981) (same); *State v. Howell*, 290 N.W.2d 355, 358 (Iowa 1980) (concluding parties cannot bargain for an illegal sentence); *Noble v. Iowa Dist. Ct.*, 919 N.W.2d 625, 631 (Iowa Ct. App. 2018) ("It is well established the parties cannot agree upon an illegal sentence."); *State v. Fix*, 830 N.W.2d 744, 751 (Iowa Ct. App. 2013) (same); *State v. Hallock*, 765 N.W.2d 598, 602 (Iowa Ct. App. 2009) ("Void sentences are not subject to the usual concepts of waiver . . . .").

In the context of no-contact orders, the controlling case is *State v. Wiederien*, 709 N.W.2d 538. In that case, the defendant was charged with harassment. *Id.* at 539. The defendant was acquitted following a bench trial, but the district court entered a no-contact order even though the criminal charge was dismissed. *Id.* at 540. The defendant challenged the no-contact order as an illegal sentence. *Id.* This court concluded that the statute "clearly informs the court and the defendant under what circumstances the court will extend a no-contact order." *Id.* at 542. We held that the statute "does not give the court the authority to continue a no-contact order" absent a conviction. *Id. Wiederien* is controlling here. *See also State v. Ryan*, 351 N.W.2d 186, 188 (Iowa 1984) ("The district court did not have any statutory or other power to make this kind of decision. Despite personal beliefs or good intentions, the district court is bound to act only under its statutory authority.").

Yet, our analysis does not end there because the defendant entered an *Alford* guilty plea for two counts of assault causing bodily injury—one count for Victim 1 and another count for Victim 2. An assault charge regarding Victim 3 was based on the very same altercation. Although she did not sustain the same level of bodily injuries as the other two victims, Victim 3 was on the receiving end of the very same crime for which there was a conviction.

The statutory definition of "victim" under Iowa Code section 664A.1(3) is not so narrow that it precludes a no-contact order prohibiting the defendant's contact with Victim 3. It simply defines "victim" as "a person who has suffered physical, emotional, or financial harm as a result of a public offense, as defined in section 701.2, committed in this state." *Id.* That language does not require that the victim protected under the order be the actual person to whom the public offense was directed towards. In fact, we have declined to adopt a restricted definition of "victim" that would confine its application "to those who have suffered injury 'as a result of a crime committed *against that person.*' " *State v. Tesch*, 704 N.W.2d 440, 452 (Iowa 2005) (quoting *State v. Hill*, 714 A.2d 311, 312 (N.J. 1998) (per curiam)).

In *State v. Tesch*, a defendant was convicted of criminal mischief after he destroyed traffic warning signs and other obstacles intended to warn drivers and keep them from driving into a recently dug trench on a county road. *Id.* at 443–44. Because of the defendant's actions, a driver had no notice of the trench's location and suffered severe injuries when he drove into it. *Id.* On appeal, we rejected the defendant's claim that the driver was not a "victim" under Iowa Code section 915.10(3) governing victim-impact statements because the essence of the defendant's crime was damage or destruction of county property. *Id.* at 451. In doing so, we reasoned that the driver's injuries were clearly the result of the defendant's crimes even though the defendant "may not have intended to injure [the driver]." *Id.* Further, we stressed that Iowa's definition of "victim" requires a broad interpretation to promote the statute's purpose of ensuring fair treatment to crime victims and helping victims overcome the emotional hardships resulting from those crimes. *Id.*

And nothing in Iowa Code section 664A.1(3) quantifies how significant the harm a person suffers must be to qualify as a "victim" under the statute, nor is

it our role to make that determination. *See, e.g., State v. Hauge*, 973 N.W.2d 453, 465–66 (Iowa 2022) ("[W]e leave policy decisions to the legislature."). To illustrate, our court of appeals recently held that the emotional harm that a sibling suffered "as a witness in proximity to the crime committed against his brother . . . was enough for the court to find that [he] qualified as a 'victim' of the third-degree harassment conviction under Iowa Code section 664A.1(3)." *State v. Demers*, No. 23–0367, 2024 WL 960915, at *4 (Iowa Ct. App. Mar. 6, 2024). Similarly, the district court here could have concluded that the emotional harm of witnessing the defendant attack Victim 3's two friends unexpectedly outside Boone City Hall was enough to find that Victim 3 qualified as a "victim" under Iowa Code section 664A.1(3). *See id.* For these reasons, nothing in the statutes governing no-contact orders precludes the district court from entering a no-contact order in this case prohibiting the defendant from contact with Victim 3.

Nevertheless, it is not our role as an appellate court to impose that sentence today. Accordingly, we remand this case to the district court for a limited resentencing hearing that provides the State and the defendant with notice and an opportunity to be heard on the issue of whether to impose a no-contact order prohibiting the defendant's contact with Victim 3. We affirm the defendant's consecutive one-year sentence for each count and the no-contact orders involving the other two victims.

### III. Conclusion.

We affirm the defendant's conviction, prison sentence, and the no-contact orders involving Victims 1 and 2. We remand to the district court with the following instructions: (1) the district court shall strike the provision in the sentencing order that a no-contact order be entered in the dismissed simple misdemeanor case, (2) the district court shall vacate the no-contact order entered in the simple misdemeanor case, and (3) the district court shall hold a hearing to

determine whether a no-contact order involving Victim 3 as the protected party should be entered in this serious misdemeanor case.

**DECISION OF COURT OF APPEALS AFFIRMED IN PART AND VACATED IN PART; DISTRICT COURT JUDGMENT REVERSED AND REMANDED WITH INSTRUCTIONS.**