933 A.2d 938

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v. JESSIE D. CHAMBERS, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted September 25, 2007—Decided October 10, 2007.

Before Judges SKILLMAN [1], WINKELSTEIN and YANNOTTI.

*Yvonne Smith Segars, Public Defender,* attorney for appellant (William Welaj, Designated Counsel, of counsel and on the brief).

*Bruce J. Kaplan,* Middlesex County Prosecutor, attorney for respondent (*Simon Louis Rosenbach,* Assistant Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

WINKELSTEIN, J.A.D.

In this appeal, one of the issues we are called upon to decide is whether a museum falls within the definition of a public building under *N.J.S.A.* 2C:35–7.1, thus elevating a third-degree crime of possession with the intent to distribute a controlled dangerous substance to a second-degree offense when the offense is committed within 500 feet of a public building, if the museum does not have regular and consistent hours and is only open to the public

---

[1] With the consent of counsel, Judge Skillman has participated in the opinion.

upon request. We conclude that under such circumstances a museum nevertheless qualifies as a public building.

In October 2003, a Middlesex County grand jury indicted defendant Jessie Chambers, charging him with the following crimes: third-degree possession of cocaine, *N.J.S.A.* 2C:35–10a(1) (count one); third-degree possession of cocaine with the intent to distribute, *N.J.S.A.* 2C:35–5a(1) and *N.J.S.A.* 2C:35–5b(3) (count two); third-degree possession of cocaine with the intent to distribute within 1000 feet of school property, *N.J.S.A.* 2C:35–5a and *N.J.S.A.* 2C:35–7 (count three); and second-degree possession of cocaine with the intent to distribute within 500 feet of a public building, a museum, *N.J.S.A.* 2C:35–5a and *N.J.S.A.* 2C:35–7.1 (count four).

On November 30, 2004, a jury convicted defendant of all charges. At sentencing, the court merged counts one and two into count three, and on count three, the court imposed a six-year, six-month prison term with three years and three months of parole ineligibility. On count four, the court imposed a five-year prison term, concurrent with the sentence on count three.

On appeal, defendant raises the following legal points for our consideration:

*POINT I:*

THE TRIAL COURT ERRED IN DENYING DEFENSE COUNSEL'S MOTION FOR A NEW TRIAL ON THE BASIS THAT THE TESTIMONY PRESENTED BY THE STATE THROUGH INVESTIGATOR KEVIN MORTON EXCEEDED THE PERMISSIBLE SCOPE OF EXPERT TESTIMONY. (PARTIALLY RAISED BELOW).

*POINT II:*

THE TRIAL COURT ERRED IN DENYING DEFENSE COUNSEL'S MOTION TO DISMISS COUNT IV SINCE THE STATE FAILED TO DEMONSTRATE THAT THE ALLEGED DRUG ACTIVITY TOOK PLACE WITHIN 500 FEET OF [A] PUBLIC BUILDING SINCE THE BUILDING IN QUESTION DID NOT CONSTITUTE A PUBLIC BUILDING.

*POINT III:*

THE DEFENDANT IS ENTITLED TO A REMAND FOR A DETERMINATION AS TO THE REASONS FOR THE STATE'S DECISION TO SEEK AN EXTENDED TERM AND WHETHER SUCH A DECISION WAS ARBITRARY AND CAPRICIOUS. (NOT RAISED BELOW)

*POINT IV:*

THE TRIAL COURT ERRED BY FAILING TO MERGE COUNT III CHARG-ING POSSESSION WITH INTENT TO DISTRIBUTE A CONTROLLED DAN-GEROUS SUBSTANCE WITHIN A SCHOOL ZONE INTO COUNT IV CHARGING POSSESSION WITH INTENT TO DISTRIBUTE A CON-TROLLED DANGEROUS SUBSTANCE WITHIN 500 FEET OF CERTAIN PUBLIC PROPERTY. (NOT RAISED BELOW).

*POINT V:*

THE SENTENCE IMPOSED WAS MANIFESTLY EXCESSIVE.

We find no merit to defendant's arguments in points one, two, three and five. We agree with his position in point four that the court should have merged counts three and four. Consequently, we vacate the sentence on count four and remand to the Law Division to merge the convictions on counts three and four and amend the judgment of conviction. Otherwise, we affirm defendant's conviction and sentence.

We glean the following facts from the trial record. On August 8, 2003, New Brunswick Police Officer Michael Yurkovic, Detective Michael Sutton and Lieutenant Paul Schuster were patrolling the Remsen Avenue area of New Brunswick in plain clothes in an unmarked mini-van. Shortly after midnight, as they approached the intersection of Remsen Avenue and Seaman Street, which was within 1000 feet of the Paul Robeson School and within 500 feet of the New Brunswick Fire Museum (the Museum), they observed defendant with another man, later identified as Eugene Napolitano. The pair were engaged in what appeared to be a drug transaction.

Defendant had his right hand cupped and extended in front of him. Napolitano looked toward defendant's palm, while handing him money. As the officers turned onto Seaman Street, defendant glanced in the direction of their vehicle. Napolitano pulled his hand back and dropped the money. Defendant dropped the contents of his cupped hand. Napolitano turned and walked up Seaman Street away from the intersection. Defendant turned and walked in the opposite direction, toward the intersection of Remsen and Seaman.

Yurkovic and Sutton got out of the mini-van. Yurkovic caught defendant and arrested him, and he took defendant back to the scene of the transaction, where Yurkovic recovered nine individually-wrapped clear plastic bags containing crack cocaine from the sidewalk. His search of defendant's pants pocket yielded $196, consisting of four twenty-dollar bills, seven ten-dollar bills, four five-dollar bills, and twenty-six one-dollar bills.

Sutton caught Napolitano and asked him to open his hands. Napolitano complied, and Sutton removed five quarters from his hand. Schuster collected nine dollars off the sidewalk.

[At the court's direction, the testimony of the State's expert in narcotics offenses has been omitted from the published version of this opinion.]

In support of the charge that defendant was selling cocaine within 500 feet of a public building, the Museum, the State offered the testimony of Deputy Fire Chief William Bradley. Bradley testified that the Museum is owned and maintained by the City of New Brunswick. Though the Museum does not have regular operating hours, the public is provided tours of the Museum by appointment, and several groups have taken the tour. The State introduced a map showing the location of the building and designating the building as a public building.

## I & III

[At the court's direction, sections I and III of the opinion, which include discussions of the issues defendant raised in points one, three, four and five of his brief, have been omitted from the published version of this opinion.]

## II

Next, we address whether the Museum falls within the definition of a public building so as to satisfy a critical element of *N.J.S.A.* 2C:35–7.1, that defendant possessed a controlled dangerous substance within 500 feet of a public building with the intent

to distribute. The pertinent portion of the statute reads as follows:

Any person who violates subsection a. of *N.J.S.* 2C:35–5 by distributing, dispensing or possessing with intent to distribute a controlled dangerous substance . . . while in, on or within 500 feet of the real property comprising a public housing facility, a public park, or a public building is guilty of a crime of the second degree, except that it is a crime of the third degree if the violation involved less than one ounce of marijuana.

[*N.J.S.A.* 2C:35–7.1a.]

A public building is defined as "any publicly owned or leased library or museum." *N.J.S.A.* 2C:35–7.1f.

Here, the State presented evidence that the transaction observed by the officers occurred within 500 feet of the Museum. Defendant claims that the State's proofs fail because the Museum does not maintain regular and consistent hours of operation. The State argues that simply because the Museum has hours "by appointment only" does not make it any less a museum for purposes of the statute. The trial judge agreed with the State and so do we.

Whether the Museum qualifies as a museum within the parameters of *N.J.S.A.* 2C:35–7.1, which elevates a third-degree crime of possession with the intent to distribute to a second-degree crime, is a question of law. *State v. Drury*, 190 *N.J.* 197, 209, 919 *A.*2d 813 (2007). Our goal when interpreting a statute's meaning is to discern and implement the legislature's intent. *Ibid.* As a starting point, we look to the statute's plain meaning and " '[i]f the meaning of the text is clear and unambiguous on its face, [we] enforce that meaning.' " *Ibid.* (quoting *State v. Reiner*, 180 *N.J.* 307, 311, 850 *A.*2d 1252 (2004)). If, however, the meaning of the text is ambiguous, we construe a criminal statute in favor of the defendant. *Reiner, supra*, 180 *N.J.* at 311, 850 *A.*2d 1252. Nevertheless, in interpreting a criminal statute, rules of construction are "subordinate to the goal of effectuating the legislative plan as it may be gathered . . . 'when read in the full light of its history, purpose and context.' " *State v. Lewis*, 185 *N.J.* 363, 369, 886 *A.*2d 643 (2005) (quoting *State v. Gill*, 47 *N.J.* 441, 444, 221 *A.*2d 521

(1966)); *see also N.J.S.A.* 2C:1–2c (provisions of criminal code "construed according to the fair import of their terms").

*N.J.S.A.* 2C:35–7.1 was enacted as part of the Comprehensive Drug Reform Act of 1987, *N.J.S.A.* 2C:35–1 to –36A–1. In enacting that legislation, "the Legislature declared its 'intention ... to provide for the strict punishment, deterrence and incapacitation of the most culpable and dangerous drug offenders' stating '[i]t is also the policy of this State to afford special protection to children from the perils of drug trafficking.' " *Lewis, supra,* 185 *N.J.* at 370, 886 *A.*2d 643 (quoting *N.J.S.A.* 2C:35–1.1c).

Though the statute defines a public building to include a museum, it does not define museum. No case law has interpreted the term "museum" under the statute. Defendant urges that we should be informed by the case law that construes *N.J.S.A.* 2C:35–7, which applies when a defendant is accused of possessing a controlled dangerous substance with the intent to distribute "while on any school property used for school purposes" or within 1000 feet of such school property. *N.J.S.A.* 2C:35–7. In construing that language, the Supreme Court of New Jersey has held that when the use of a school is not "self-evident," the State must present evidence that the property is "regularly, consistently, and actually" used for school purposes. *State v. Thomas,* 132 *N.J.* 247, 258–59, 624 *A.*2d 975 (1993) (citing *State v. Ivory,* 124 *N.J.* 582, 592, 592 *A.*2d 205 (1991)); *see also State v. Belnavis,* 311 *N.J.Super.* 195, 198, 709 *A.*2d 805 (App.Div.1998) (same).

Based on the plain language of *N.J.S.A.* 2C:35–7.1, we decline to take that approach. We find no support in either the statute's legislative history or its plain language that a museum must be open to the public with regular, consistent hours to qualify as a public building. Public building is simply defined as a publicly owned or leased library or museum. We perceive that "the plain language of [the] statute is the best indicator of legislative intent." *R.A.C. v. P.J.S., Jr.,* 192 *N.J.* 81, 95, 927 *A.*2d 97 (2007).

Here, that the Museum is publicly owned is not disputed. While it does not have regular hours, it is open to the public upon

request. Public groups have visited the Museum, and they may schedule appointments either online or by telephoning the fire department. The State suggests, and we agree, that municipal budgets may not provide for the staffing of a museum during regular, consistent hours. That is substantially different from the common use of school property, where education is mandatory, *N.J.S.A.* 18A:38–25 (children between ages of six and sixteen required to attend school or receive equivalent instruction), and schools are required to be open 180 days per year, *N.J.S.A.* 18A:7F–9 (state aid conditioned upon districts providing public school facilities for at least 180 days); Atty. Gen. F.O., 1975, No. 19 (public schools must be open for instruction "at least 180 days each school year"). We decline to draw a parallel between the statutes that prohibit the sale of a controlled dangerous substance within 1000 feet of a school and within 500 feet of a public building. Accordingly, we find no merit to defendant's argument on this issue.

## IV

We affirm defendant's convictions. We vacate defendant's sentence under count four and remand for merger of count three and count four and amendment of defendant's judgment of conviction.

Affirmed in part, reversed in part and remanded.