requiring CBS to obtain a (d)(1) variance if it seeks to establish and operate a billboard in Lebanon.

Thus, our remand to the Planning Board is truly provisional. The actual remand proceedings need not commence unless and until there is a final determination invalidating Ordinance No. 2009–03's prohibition on billboards. We take pains to declare that we take no position regarding the outcome of that action and nothing that we have stated in this opinion is intended to presage a particular result.

Affirmed in part; reversed in part; and provisionally remanded to the Board in accordance with the terms of this opinion. We do not retain jurisdiction.

999 A.2d 1168

IN THE MATTER OF THE AUGUST 16, 2007 DETERMINATION OF THE NJDEP OF AN EXEMPTION FROM THE NEW JERSEY HIGHLANDS WATER PROTECTION AND PLANNING ACT ON BEHALF OF CHRIST CHURCH, BLOCK 22203, LOTS 2 AND 3, ROCKAWAY TOWNSHIP, MORRIS COUNTY, NEW JERSEY.

Superior Court of New Jersey
Appellate Division

Argued December 15, 2009—Decided July 22, 2010.

Before Judges SKILLMAN, FUENTES and GILROY.

*John P. Miller* argued the cause for appellant Township of Rockaway (*The Buzak Law Group,* attorneys; *Edward J. Buzak* and *Mr. Miller,* on the briefs).

*Steven R. Klein* argued the cause for respondent Christ Church (*Cole, Schotz, Meisel, Forman & Leonard,* attorneys; *Mr. Klein,* of counsel and on the brief; *David P. Steinberger* and *Christopher P. Massaro,* on the brief).

*Lewin J. Weyl* argued the cause for respondent Department of Environmental Protection (*Anne Milgram,* Attorney General, attorney; *Lewis A. Scheindlin,* Assistant Attorney General, of counsel; *Jill Denyes,* Deputy Attorney General, on the brief).

The opinion of the court was delivered by

FUENTES, J.A.D.

In this appeal, the Township of Rockaway (Rockaway) challenges a decision by the New Jersey Department of Environmental Protection (the DEP) that a proposed church campus construction project submitted by the Christ Church (the Church) was exempt from the provisions and regulations of the Highlands Water Protection and Planning Act, *N.J.S.A.* 13:20–1 to –35 (the Highlands Act). Particularly, the DEP found that the Church's project was exempt from the Highlands Act under *N.J.S.A.* 13:20–28 a(4), as a reconstruction project that is "within 125% of the footprint of the lawfully existing impervious surfaces on the site, provided that the reconstruction does not increase the lawfully existing impervious surface by one-quarter acre or more." *Ibid.*

As framed by the parties, we are required to determine whether the DEP: (1) misconstrued the meaning of the terms "footprint" and "reconstruction" contained in *N.J.S.A.* 13:20–28 a(4); (2) erred in finding that the Church's project was within 125% of the footprint of the lawfully existing impervious surfaces and that the project did not increase the impervious surface by one-quarter

acre or more; and (3) erred in finding that certain preexisting impervious surfaces on the property were lawful.

Mindful that our standard of review requires us to give substantial deference to an administrative agency's interpretation of a statute that the agency is charged with enforcing, we conclude that, under the facts presented, the DEP's interpretation of the term "reconstruction" in *N.J.S.A.* 13:20–28 a(4) is consistent with the public policy underpinning the Highlands Act and constitutes a sustainable exercise of the agency's enforcement authority. These same principles lead us to uphold the DEP's interpretation of the term "footprint" in *N.J.S.A.* 13:20–28 a(4), in determining that the Church project does not increase the preexisting impervious surface by more than one-quarter acre and is within 125% of the lawfully existing impervious surfaces.

The following facts will inform our discussion of the legal issues raised in this appeal.

I

On August 23, 2005, the Church acquired a one hundred acre lot located within the Highlands preservation area[1] in Rockaway. The lot included approximately 17.18 acres of preexisting impervious surface that had been developed with a two-story office building, a one-story industrial building, a garage/maintenance building, paved driveways and parking areas, a ball field, a sanitary pump-station, and a well that Rockaway used to supply water to its residents. These developments were constructed in the early 1980's by Hewlett Packard, Inc., the then-owner of the lot.

The United States Army Corps of Engineers (the Corps) had jurisdiction over the filling of wetlands at the time. In August of 1984, the Corps learned that Hewlett Packard filled "[a]bout 20

---

[1] The boundaries of the Highlands preservation area are delineated in *N.J.S.A.* 13:20–7.

acres of riverine and scrub/shrub wetlands" in order to construct "parking lots, buildings and a baseball field." The record provides no detail on the exact location of the filled wetlands. There is also no evidence that Hewlett Packard obtained a permit to fill the wetlands. Despite this, the Corps did not initiate enforcement proceedings against Hewlett Packard nor did the Corps cite it for filling the wetlands without authorization. By December of 1985, the Corps reported that the fill had been mitigated and was deemed acceptable.

The Church acquired this property with the intention of converting the developed property into "a church campus consisting of a 2,512–seat sanctuary, a 350–student K–5 elementary school, a gymnasium, recreational fields, administrative offices[,] and cafeteria/dining areas, all [of which would be] serviced by parking areas and internal roadways." The Church's application stated that the new campus would be located in substantially the same location as the existing buildings but would be slightly smaller than the existing development, decreasing the total impervious surface from 17.18 acres to 17.02 acres. The Church did not intend to disturb any of the remaining undeveloped land on the property.

On August 24, 2004, the day after it purchased the property, the Church submitted an application to the DEP requesting a determination as to whether its proposed church campus was exempt from the Highlands Act's regulations pursuant to *N.J.S.A.* 13:20–28 a(4). The Church also submitted an application for site-plan approval to the Rockaway Planning Board (the Planning Board).

By letter dated September 27, 2004, Rockaway requested permission from the DEP to participate in the proceedings related to the Church's application because: (1) the Church had a site-plan-approval request pending before the Planning Board; and (2) a primary well for Rockaway's water supply was located on the Church's property.

On September 30, 2004, the DEP sent the Church an Applicability Determination, granting its exemption application. In this letter, the DEP did not make factual findings in support of its

ultimate determination. Rockaway thereafter filed a timely appeal of the DEP's determination to this court. After some initial motion practice, we dismissed Rockaway's appeal without prejudice and remanded for the DEP to make specific factual findings to support its ultimate determination.

On September 23, 2005, the Church submitted to the DEP an application for exemption, which was substantially similar to its earlier filing; this application provided for a smaller campus, reducing the proposed developed area to 16.94 acres. The DEP review included discussions with the Church's engineer, a site visit, an investigation into the filled wetlands on the property, and public comments on the proposal.

On February 5, 2007, the Planning Board approved the Church's development plan. Approximately six months later, the DEP granted the Church's exemption application. The approval letter from the DEP described the Church's proposal as follows:

The applicant proposes to reconstruct an inactive industrial facility, comprised of offices, storage/distribution and manufacturing areas, as a church campus consisting of a 2,512-seat sanctuary, a 350-student K-5 elementary school, a gymnasium, recreational fields, administrative offices[,] and cafeteria/dining areas, all serviced by parking areas and internal roadways, as indicated in a letter from the applicant's attorney ... dated September 23, 2005[,] and depicted on the site plan.

Although the DEP found that this proposal satisfied all of the criteria contained within *N.J.S.A.* 13:20–28 a(4), it made its final approval subject to the following conditions and limitations:

This exemption determination is limited to the land area and specific scope of the activities described herein or as shown on the referenced site plans above. This determination does not eliminate the need for any permits, approvals, or certifications that may be required by the Department or any Federal, State, county or municipal review agency with jurisdiction over this project/activity. Department approvals that may be required include, but are not limited to: sewer extension and discharge approvals under the Water Pollution Control Act (*N.J.S.A.* 58:10A), water main extensions under the Safe Drinking Water Act (*N.J.S.A.* 58:12A), approval under the Realty Improvement Sewerage and Facilities Act (*N.J.S.A.* 58:11–23 *et seq.*), water allocation or registration pursuant to the Water Supply Management Act (*N.J.S.A.* 58:1A), approvals under the Freshwater Wetlands Protection Act (*N.J.S.A.* 13:9B)[,] and approvals under the Flood Hazard Area Control Act (*N.J.S.A.* 58:16A–50 *et seq.*).

Impervious surface addition on the site shall be limited to less than 0.25 of an acre.

If the site is forested, any disturbance more than 20–feet from the edge of the exempt impervious cover is not exempted. If disturbance extends beyond this limit, the subject project/activity shall become disqualified for this exemption.

This exemption shall not apply to reconstruction of any agricultural or horticultural building or structure for a non-agricultural or horticultural use.

The under-the-building parking garage must not extend beyond the limit of impervious surface depicted on the site plan prepared by Paul W. Anderson, P.E., titled "CHRIST CHURCH BLOCK 22203 LOT 2 & 3 ROCKAWAY TOWNSHIP MORRIS COUNTY, NEW JERSEY HIGHLANDS EXHIBIT # F PROPOSED IMPERVIOUS 7/17/06", with an original date of September 14, 2005 and last revised on March 16, 2007, sheet 2 of 3.

Following this approval, Rockaway requested that the DEP hold an adjudicatory hearing to permit Rockaway to contest the DEP's conclusion. At the same time, Rockaway filed a notice of appeal with this court challenging the DEP's grant of final approval. Thereafter, we granted the Church's motion to dismiss Rockaway's appeal for failure to exhaust administrative remedies. Following the DEP's denial of its request for an adjudicatory hearing, Rockaway filed a new notice of appeal challenging the DEP's conclusion that the Church's proposed project was exempt from the Highlands Act. Rockaway does not challenge in this appeal the DEP's denial of its request for an adjudicatory hearing.

II

Rockaway argues that the DEP erred in granting the Church an exemption under *N.J.S.A.* 13:20–28 a(4), which provides, in pertinent part, as follows:

The following are exempt from the provisions of this act, the regional master plan, any rules or regulations adopted by the Department of Environmental Protection pursuant to this act, or any amendments to a master plan, development regulations, or other regulations adopted by a local government unit to specifically conform them with the regional master plan:

. . . .

(4) the *reconstruction of any building or structure for any reason within 125% of the footprint of the lawfully existing impervious surfaces on the site,* provided that the reconstruction does not increase the lawfully existing impervious surface by one-quarter acre or more.

[*N.J.S.A.* 13:20–28 a(4) (emphasis added).]

Distilled to its essence, the statute imposes three criteria for approval: (1) the proposed project must be a *reconstruction* project; (2) the reconstruction must be within 125% of the *footprint* of the lawfully existing impervious surfaces on the property; and (3) the reconstruction must not increase the lawfully existing impervious surface by one-quarter acre or more. Rockaway argues that the DEP erred in its interpretation of the meaning of the terms "reconstruction" and "footprint" and in finding that the Church's proposal met any of these three criteria.

On appeal from a final agency determination, we can intervene only in those

> rare circumstances in which an agency action is clearly inconsistent with its statutory mission or with other State policy. Although sometimes phrased in terms of a search for arbitrary or unreasonable agency action, the judicial role is generally restricted to three inquiries: (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.

> [*Mazza v. Bd. of Trs., Police & Firemen's Retirement Sys.*, 143 *N.J.* 22, 25, 667 *A*.2d 1052 (1995).]

Moreover, we review an agency's interpretation of a statute that the agency is charged with enforcing under an enhanced "substantial deference" standard of review. *R & R Mktg., L.L.C. v. Brown–Forman Corp.*, 158 *N.J.* 170, 175, 729 *A*.2d 1 (1999) (quoting *Smith v. Director, Div. of Taxation*, 108 *N.J.* 19, 25, 527 *A*.2d 843 (1987)). "[I]f the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Matturri v. Bd. of Trs. of the Judicial Ret. Sys.*, 173 *N.J.* 368, 381–82, 802 *A*.2d 496 (2002). The agency's interpretation need not be the only permissible one or even the one that the court would have chosen had the question been first presented to it. *Id.* at 382, 802 *A*.2d 496. So long as the agency's interpretation is not "plainly unreasonable," it will prevail. *Ibid.*

That being said, we are also guided by well-established tenets of statutory construction. In this regard, "our goal is to discern and effectuate the Legislature's intent." *State v. Brannon,* 178 *N.J.* 500, 505, 842 *A.*2d 148 (2004). Absent a clear definition included within the statute itself, our starting point in defining a statutory term is the plain language of the statute, *State v. Lewis,* 185 *N.J.* 363, 369, 886 *A.*2d 643 (2005), giving the particular words used by the Legislature their generally accepted meaning, *D'Annunzio v. Prudential Ins. Co. of Am.,* 192 *N.J.* 110, 119, 927 *A.*2d 113 (2007), while striving to give effect to each word, *Med. Soc'y of N.J. v. N.J. Dep't of Law and Pub. Safety,* 120 *N.J.* 18, 26, 575 *A.*2d 1348 (1990).

## A

The first criterion in *N.J.S.A.* 13:20–28 a(4) requires that the project be a "reconstruction." The DEP has not promulgated regulations defining "reconstruction" within the meaning of the Highland's Act, and the statute is equally silent on the issue. The DEP argues that "reconstruction" permits the proposed Church project because *N.J.S.A.* 13:20–28 a(4) allows the reconstruction to be for "any reason" provided that it does not exceed 125% of the footprint of the existing and lawful impervious surface. According to the DEP, accepting a narrower meaning of the term would render those provisions meaningless because it would limit development to the use that already exists and the size of the newly constructed buildings to those already on the property.

The DEP also argues that this expansive definition of "reconstruction" is consistent with the Highlands Act's underlying policy of protecting the natural resources and water supply located within the Highlands while also encouraging appropriate development within the area. The DEP cites the following legislative findings in support of its position:

The Legislature further finds and declares that the New Jersey Highlands provides a desirable quality of life and place where people live and work; that it is important to ensure the economic viability of communities throughout the New Jersey Highlands; and that residential, commercial, and industrial development,

redevelopment, and economic growth in certain appropriate areas of the New Jersey Highlands are also in the best interests of all the citizens of the State, providing innumerable social, cultural, and economic benefits and opportunities. [*N.J.S.A.* 13:20–2.]

According to the DEP, the Church's proposed use of the property is consistent with this public policy because it will provide social and cultural benefits and reduce the negative environmental impact that the previous industrial use had on the site.

In order to properly assess the reasonableness of the approach adopted by the DEP, we must refer to the architectural plans submitted by the Church in support of its application for site plan approval before the Planning Board. Those plans are reproduced here and made a part of this opinion in the attached Appendices. Stated differently, a narrative description alone is insufficient to fully appreciate both the scope and nature of this project.

As shown in Appendix A, the preexisting Hewlett Packard office complex consists of two L-shaped buildings and other impervious surfaces, which cover 17.290 acres according to this site plan. Appendix B depicts the proposed Church project, which utilizes one of the Hewlett Packard buildings as a grammar school, reconfigures the other part of the previous L-shaped building, and alters the other impervious surfaces of the property. The proposed project would cover a total of 17.144 acres of impervious space as calculated on Appendix B. This would reduce the impervious area previously occupied by the Hewlett Packard complex by 0.146 acres. However, the actual alterations of the buildings can best be appreciated in a visual format by comparing Appendix A with Appendix B. Similarly, the best way to appreciate the actual impact the Church project would have on ancillary areas of the Hewlett Packard site is to compare Appendix C, which depicts the current state of the Hewlett Packard compound, with Appendix D, which shows the reconfiguration of the site based on the proposed Church campus.

This analysis is not intended as a de novo review of the decision reached by the DEP. To the contrary, it is intended to show that even a lay assessment of the project can lead a reasonable

observer to conclude that the project is more akin to a reconstruction of the existing structures, dedicated to a new use, than a construction of a new development, without any meaningful ties to what previously existed.

When this analysis is considered in the context of our duty to defer to an agency's expertise in construing a statute that the Legislature entrusted it to enforce, we are bound to uphold the decision of the DEP, which accepted the Church project as constituting a "reconstruction" of the preexisting Hewlett Packard complex within the meaning of *N.J.S.A.* 13:20–28 a(4).

## B

We turn next to consider Rockaway's argument that the DEP erred in finding that the Church's project was within 125% of the footprint of the lawfully existing impervious surfaces. As is the case with the term "reconstruction," the Highlands Act does not define "footprint" and the DEP has not promulgated regulations to fill this definitional void.

In the absence of legislative or regulatory guidance, Rockaway proposes that we look to the DEP's coastal permitting regulations for guidance. Specifically, *N.J.A.C.* 7:7–1.3 defines "footprint of development" as "the vertical projection to the horizontal plane of the exterior of all exterior walls of a structure." Based on this definition, Rockaway argues that we limit the term "footprint" in *N.J.S.A.* 13:20–28 a(4) to the impervious surfaces created by buildings only.

The DEP argues that the "footprint of the lawfully existing impervious surface" refers to the area covered by *all* impervious surfaces. Citing *N.J.S.A.* 13:20–3, which defines an "impervious surface" as "any structure, surface, or improvement that reduces or prevents absorption of stormwater into land, and includes porous paving, paver blocks, gravel, crushed stone, decks, patios, elevated structures, and other similar structures, surfaces, or improvements," the DEP argues that the phrase "the footprint of

the impervious area" refers to all impervious surfaces on the property.

Adopting this definition, the proposed Church campus will not create a new footprint on the currently pervious surfaces. The campus will be constructed on the area that currently has impervious surface and will result in a 6574 square foot reduction of impervious surface. Given our standard of review, we discern no legal basis to reject the approach advocated by the DEP in this respect. We also reject Rockaway's argument seeking to import into the Highlands Protection and Planning Act a definition of a term used in the coastal permitting process.

## C

■  We next address Rockaway's challenge to the calculations used by the DEP to determine whether a reconstruction project is within 125% of the footprint of the lawfully existing impervious surfaces and whether the project did not increase the impervious surface by one-quarter acre or more. According to Rockaway, in order to make this determination, the DEP compared the gross amount of impervious surface that exists on the property with the gross amount that will exist after the project is completed. So long as the final project did not create an impervious surface that is larger than 125% of the existing impervious surfaces, the DEP would approve the project as satisfying the second criterion. In employing this net calculation, Rockaway argues, the DEP ignored the term "footprint" by allowing the new impervious surface to be located anywhere on the property.

The DEP contends that it uses the following formula to determine whether a proposal satisfies this statutory criterion: proposed additional impervious surface plus lawfully existing impervious surface, divided by lawfully existing impervious surface times one hundred. As long as the total proposed impervious surface is less than 125, the project will be considered to cover less than 125% of the footprint of the existing impervious surface. According to the DEP, this approach does not credit the applicant for

removal of preexisting impervious surfaces on the property and is not the equivalent of a net calculation. The DEP explains the application of this approach as follows:

> Under the proper application of the formula, as the new impervious [surface] strays further from the existing footprint of impervious surface, the percentage rendered by the calculation increases, even if the applicant removes as much impervious [surface] as it creates. So, for example, where the entire area of footprint of impervious surface is moved elsewhere on the property to virgin, previously pervious surface, the total additional impervious percentage would be 200% even though there was no increase in the net impervious surface.

Applying this formula to the particular characteristics of the Church project as depicted in Appendices C and D, one can see that the proposed project is within 125% of the footprint of the existing impervious surface. The calculation is as follows: 174,737 square feet of proposed additional impervious surface plus 753,351 square feet of lawfully existing impervious surface, divided by 753,351 square feet of lawfully existing impervious surface times one hundred, which equals 123.194633. Thus, the DEP concluded that the Church campus will not be larger than 125% of the footprint of the existing impervious surface. This approach has the benefit of being both logical and consistent with the public policy goals of the Highlands Act. We discern no legal reason to substitute our judgment for that of the DEP in this area. *Matturri, supra,* 173 *N.J.* at 381–82, 802 *A.*2d 496.

## D

█ Finally, we reject Rockaway's argument that twenty acres of wetlands in the original Hewlett Packard property should not be considered lawfully existing impervious surfaces on the site in determining whether the reconstruction is "within 125% of the footprint of the *lawfully existing* impervious surfaces on the site." *N.J.S.A.* 13:20–28 a(4) (emphasis added). In support of this argument, Rockaway points to the twenty acres of wetlands that Hewlett Packard filled on the site without first obtaining a permit from the Corps.

The record is devoid of any evidence that Hewlett Packard was ever issued a citation or a notice of violation for unlawfully filling the wetlands by the Corps or the United States Environmental Protection Agency (EPA), the federal agency that now has jurisdiction over the site. According to an email from Christopher Mallery of the Corps dated December 9, 2005, both the Corps and the EPA conducted "exhaustive searches" and found no record of an enforcement case ever being initiated against Hewlett Packard for the fill. Further, by December of 1985, the Corps reported that the fill had been mitigated and was deemed acceptable.

In summary, based on the record before us, we discern no legal authority to conclude that the DEP's construction of the statutory terms at issue are inconsistent with the public policy underpinning the Highlands Act. It is not unreasonable for the DEP to find that the Church project constitutes a "reconstruction" of the Hewlett Packard complex under *N.J.S.A.* 13:20–28 a(4). We suggest, however, that the DEP promulgate regulations defining the terms under review here to avoid the type of ambiguity we confronted in deciding this case. Such regulations would not only assist future applicants but would prevent judicial review from being dependent on the unique facts presented. The existing regulatory void carries an undue propensity for ad hoc adjudication.

Affirmed.

## Appendix A—Current Hewlett Packard Site

Appendix B—Proposed Christ Church Site

Appendix B - Proposed Christ Church Site

## Appendix C—Current Hewlett Packard
### Site with Ancillary Areas

Appendix C – Current Hewlett Packard Site with Ancillary Areas

Appendix D—Proposed Christ Church Site with Ancillary Areas